# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **A.H.**

**No. 19-1074** (Kanawha County 17-JA-415)

**FILED**
**June 25, 2020**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father D.G., by counsel Benjamin Freeman, appeals the Circuit Court of Kanawha County's October 23, 2019, order terminating his parental rights to A.H.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order and a supplemental appendix. The guardian ad litem, W. Jesse Forbes, filed a response on behalf of the child in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating his parental rights "because he had no opportunity to request a dispositional improvement period or enough time to rehabilitate himself."

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In October of 2017, the DHHR filed an abuse and neglect petition alleging that the parents abused drugs and engaged in domestic violence, including while the mother was pregnant with A.H. The DHHR also alleged that the mother overdosed on drugs, which resulted in her falling into a coma three days before the birth of A.H. As result, A.H. was born three months premature, exposed to amphetamine and methamphetamine, and suffered from a compromised immune system. The DHHR further alleged that petitioner was likely the father of A.H. and that the mother's parental rights to two other children had been previously terminated. After the preliminary hearing, the DHHR offered services to petitioner, which included individualized parenting sessions, adult life skills classes, random drug screening, and supervised visitations. Due

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

to the child's medical condition and placement in the neonatal intensive care unit, paternity testing was delayed by many months.[2] By March of 2019, the circuit court received the paternity results and entered an order determining that petitioner was the father of A.H. The same month, petitioner tested positive twice for methamphetamine and amphetamine.

In May of 2019, the DHHR filed an amended abuse and neglect petition naming petitioner as the father of A.H. The DHHR also alleged that petitioner tested positive for methamphetamine on November 28, 2018, March 8, 2019, and March 19, 2019; was "rough" with A.H. despite his parenting classes; failed to understand why he could not stay in a relationship with the mother even though she actively used drugs; and minimized the seriousness of his domestic violence issues with the mother. Lastly, petitioner moved out of the apartment he shared with the mother but continued paying for it while he was homeless and living in a men's shelter, thereby precluding his ability to obtain suitable housing for the child.

In June of 2019, the DHHR prepared a court summary, which reported that petitioner was not applying what he had been taught in his parenting classes and could not independently care for the child. The same month, the circuit court held an adjudicatory hearing, wherein petitioner stipulated that his substance abuse impaired his ability to parent A.H. The circuit court accepted the stipulation and adjudicated petitioner as an abusing parent.[3] Petitioner moved for a post-adjudicatory improvement period, and the circuit court advised that it would consider granting him a post-dispositional improvement period if he availed himself of services prior to the dispositional hearing. Petitioner was ordered to undergo outpatient drug treatment while he sought inpatient drug treatment, regularly submit to drug screening, and fully participate in parenting and adult life skills classes.

At the multidisciplinary team meeting in August of 2019, the DHHR reported that petitioner tested positive for opiates at least once since the June of 2019 hearing. That same month, the circuit court held a dispositional hearing, for which petitioner did not appear but counsel represented him. Petitioner's counsel moved to continue the hearing based upon his client's absence due to his alleged admission into an inpatient drug rehabilitation facility. However, the circuit court denied the motion, finding that petitioner agreed to execute a medical release for the DHHR's access to his medical records showing proof that he was admitted into an inpatient drug rehabilitation facility but had failed to do so. The DHHR moved to terminate petitioner's parental rights based upon his assertions that parenting classes were unnecessary, he would continue his relationship with the mother despite the termination of her parental rights to A.H., and his domestic violence with the mother would not harm A.H. The DHHR also noted petitioner's denial of the fact that A.H. had a compromised immune system that required additional care. Specifically, one DHHR worker testified that when she observed petitioner during visits with A.H., he was not affectionate with her, would not learn how to make her a bottle, was not receptive to advice, and did not retain important information regarding her medical problems. Another DHHR worker

_____

[2]The Court further notes that the delay in the proceedings was due to the illness and eventual passing of the presiding circuit court judge. Ultimately, the matter was transferred four times before finally being assigned to the presiding circuit court judge who entered the final order at issue on appeal.

[3]At this hearing, the circuit court also terminated the mother's parental rights to A.H.

testified that petitioner tested positive for morphine twice subsequent to the adjudicatory hearing. Although petitioner had participated in some services, both DHHR workers testified that petitioner failed to improve his parenting ability. The circuit court noted that "this case has been pending a significant period of time and, even though [petitioner] was not on any kind of formal improvement period, there has been testimony that he has been offered and availed himself of services for two years." The circuit court then concluded that there was no reasonable likelihood that the conditions of abuse and neglect could be corrected in the near future and that termination of petitioner's parental rights was necessary for the child's welfare. Ultimately, the circuit court terminated petitioner's parental rights by order entered on October 23, 2019. Petitioner now appeals that dispositional order.[4]

The Court has previously held:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in terminating his parental rights "because he had no opportunity to request a dispositional improvement period or enough time to rehabilitate himself." Petitioner asserts that the circuit court prematurely terminated his parental rights when he had taken "steps to improve his parenting ability." Further, petitioner asserts that he "intended to request a post-dispositional improvement period" but "neither [he nor] his counsel had the opportunity to move the [circuit court] to grant him an improvement period" because he was unable to attend the final dispositional hearing. However, we find no merit to petitioner's argument.

The decision to grant or deny an improvement period rests in the sound discretion of the circuit court. *See In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015) ("West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period."); Syl. Pt. 6, in part, *In re Katie S.*, 198 W. Va. 79, 479 S.E.2d 589 (1996) ("It is within the court's discretion to grant an improvement period within the applicable statutory requirements . . . ."). We have also held that a parent's "entitlement to an improvement period is conditioned upon

---

[4]The mother's parental rights were also terminated. The child is placed with a foster family, and the permanency plan is adoption by that family.

the ability of the [parent] to demonstrate 'by clear and convincing evidence that the [parent] is likely to fully participate in the improvement period.'" *In re Charity H.*, 215 W. Va. 208, 215, 599 S.E.2d 631, 638 (2004).

While petitioner avers that he was unable to request a post-dispositional improvement period because he did not attend the dispositional hearing, this argument has no basis in the law. According to West Virginia Code § 49-4-610(3)(A), in order to obtain a post-dispositional improvement period, a parent must first "move[] in writing for the improvement period." This does not require physical presence at a hearing. Further, the record shows that at the adjudicatory hearing the circuit court stated that it would consider granting petitioner a post-dispositional improvement period depending on his progress by the time of disposition. At the dispositional hearing, petitioner's alleged participation in a substance abuse treatment program was unproven because he failed to execute a release of his medical records for the DHHR, as he previously agreed to do. As a result, his exact whereabouts at the time of the hearing were unknown. The DHHR then presented evidence that petitioner continued to test positive for drugs despite his stipulations to substance abuse at adjudication. Further, one DHHR worker testified that petitioner continued to stay in contact with the mother, despite the termination of her parental rights to the child, and indicated that he would eventually live with her again. Another worker testified that petitioner had not retained any of the information he was taught during his individualized parenting sessions and was unable to perform basic parenting skills for the child. At the conclusion of the dispositional hearing, the circuit court noted that, although petitioner had not been granted a formal improvement period, he received substantial services over the preceding two years but failed to fully address his substance abuse or improve his ability to parent the child. Because numerous services were offered without petitioner demonstrating progress, we find that petitioner is entitled to no relief in this regard.

We likewise find no error in the circuit court's termination of petitioner's parental rights. West Virginia Code § 49-4-604(b)(6) (2019)[5] permits a circuit court to terminate parental rights upon findings that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the welfare of the child. Further, pursuant to West Virginia Code § 49-4-604(c)(3) (2019), a situation in which there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected includes one in which "[t]he abusing parent . . . [has] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts . . . designed to reduce or prevent the abuse or neglect of the child."

As shown above, petitioner failed to follow through with rehabilitative efforts designed to reduce or prevent the abuse or neglect of the child. Specifically, petitioner failed to comply with or benefit from the DHHR's offered services such as individualized parenting sessions, random drug screening, and supervised visitations with the child. Despite petitioner's admission to having a severe substance abuse problem and his agreement to complete inpatient drug treatment, petitioner failed to complete said treatment and continued to test positive for substances throughout the proceedings. Most importantly, petitioner disclosed that he thought his parenting classes were unnecessary, he would continue his relationship with the mother despite her untreated substance

---

[5]Although the Legislature amended West Virginia Code § 49-4-604 effective June 5, 2020, including renumbering the provisions, the amendments do not impact this case.

abuse and inability to be around the child, his domestic violence with the mother would not harm A.H., and A.H. did not have a compromised immune system requiring any additional care or special treatment. We have previously held that

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable . . . .

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted). Based on petitioner's failure to acknowledge these parenting issues and his failure to follow through with services provided by the DHHR, it is clear that there was no reasonable likelihood that petitioner could correct the conditions of abuse in the near future.

Additionally, the record shows that the child's welfare required termination of petitioner's parental rights, as there was evidence that petitioner could not independently care for the child based on the fact that he could not complete simple tasks such as properly feeding and cleaning the child. Further, petitioner denied that the child suffered from severe medical problems and failed to grasp the severity of her condition. Therefore, we find no error in the circuit court's termination of petitioner's parental rights.

Accordingly, the circuit court's October 23, 2019, order is hereby affirmed.

Affirmed.

**ISSUED**: June 25, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison

5